**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **JUDITH RISCH,**<br><br>**Plaintiff,**<br><br>        **v.**<br><br>**MIGUEL CARDONA,**<br>***Secretary of Education,***<br><br>**Defendant.** | **No. 20-cv-3213-ZMF** |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Judith Risch ("Plaintiff") brings this action against Secretary of Education Miguel Cardona ("Defendant") for violating the antidiscrimination and antiretaliation provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), codified in 42 U.S.C. § 2000e3(a). Plaintiff, an employee of the Department of Education's (the "Department's") Office of Civil Rights ("OCR"), alleges that Defendant's denial of her initial request—to either transfer from the District of Columbia Regional Office ("Metro") to the Philadelphia Regional Office or work remotely from Philadelphia for Metro—was based on sex discrimination. Plaintiff further alleges that Defendant's denial of her second request to work remotely was again discriminatory and in retaliation for Plaintiff's informal Equal Employment Opportunity ("EEO") complaint alleging sex discrimination for the denial of her first request. Pending before the Court is Defendant's Motion for Summary Judgment, which the Court will GRANT in an accompanying order.

## I.    BACKGROUND

### A.    Factual Background[1]

#### 1.    *OCR Employment*

Since January 4, 2004, Plaintiff has worked as an attorney for OCR in Metro. *See* Def.'s Statement Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 33-2; 2d Decl. Judith Risch ("2d Risch Decl.") ¶ 1, ECF No. 35-2. "[OCR] consists of twelve different regional offices that investigate cases within the assigned region." SUMF ¶ 2. The twelve offices include locations in Washington, D.C., and Philadelphia, Pennsylvania. *See id.* ¶ 3.

Beginning in "2015, Plaintiff . . . developed expertise in investigating issues related to web access and technology accessibility for persons with disabilities." 2d Risch Decl. ¶ 1. "From 2016 until June 2017, Plaintiff's duty station was in Washington, D.C." SUMF ¶ 5. "In 2016, Plaintiff's first-line supervisor was Mr. David Hensel[,] . . . [her] second-line supervisor was Mr. Ralph Suris[,] . . . [and her] third-line supervisor was Ms. Alice Wender, the then-Director of [Metro]." *Id.* ¶¶ 6–8. Additionally, "Mr. Randolph Wills[,] the Director of Enforcement, oversaw [Metro] . . . and had supervisory responsibility over Ms. Wender." *Id.* ¶ 9.

"In approximately March of 2016, Plaintiff learned that her husband was considering a position in Philadelphia, Pennsylvania." *Id.* ¶ 10.

---

[1] Plaintiff admitted forty-nine out of eighty-two of the statements in Defendant's Statement of Undisputed Facts. *See* Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 35. These admitted statements largely form the factual background. Plaintiff also submitted a seven-page "Statement of Disputed Material Facts." *See* Pl.'s Statement Disputed Material Facts Supp. Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s Disputed Facts"), ECF No. 35-1. Most of the statements are immaterial, as they do not bear on whether: (1) Defendant had a legitimate non-pretextual reason to terminate Plaintiff; or (2) Plaintiff can rebut this reason with evidence of pretext.

2.      *Plaintiff's March 10, 2016 Requests: Transfer to or Work Remotely from, Philadelphia*

"On March 10, 2016, [Plaintiff] went to [Ms.] Wender and . . . said [she] would be open to two options[,]" either transferring to the Philadelphia Regional Office or "staying at [Metro] but coming to [D.C. two] to [three] times a month." Pl.'s Mem. P. & A. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), Ex. 1, Investigative R. ¶ 20, ECF No. 35-2. "Under the Office's transfer policy[,] . . . the Director of the receiving office ha[d] full discretion to accept a transferee." SUMF ¶ 14. "In 2016, Ms. Wendella Fox was the Director of the Philadelphia Regional Office." *Id.* ¶ 17.

On March 11, 2016, "Ms. Wender approached Ms. Fox about Plaintiff's request to transfer to the Philadelphia Regional Office." *Id.* ¶ 18. Ms. Fox informed Ms. Wender "that Ms. Fox had already filled the two available vacancies in the Philadelphia Regional Office," and therefore, there were no remaining vacancies. *Id.* ¶ 19. "Ms. Wender considered approaching Ms. Sandra Battle, the then-Deputy Assistant Secretary for Enforcement, about authorizing additional positions in the Philadelphia Regional Office." *Id.* ¶ 20. Ms. Wender first asked "Ms. Fox if she would be open to [Plaintiff]'s transfer. Ms. Fox asked [Ms. Wender] if [Plaintiff] had expertise investigating sexual violence and Title VI discipline cases since [Ms. Fox] needed staff with expertise on those issues." Def.'s Mot. Summ. J., Ex. 5, EEO Investigative Aff. ("Wender Aff.") ¶ 13, ECF No. 33-8. Ms. Wender "responded that [Plaintiff] did not have experience with those issues . . . but [that Plaintiff] had expertise on a range of [other] issues under Section 504." *Id.*

"On Monday, March 14, 2016, [Ms. Wender] received an email from Ms. Fox indicating that her office was not interested in bringing [Plaintiff] on board and she wished [Plaintiff] well. Based on [this] response, [Ms. Wender] never asked Ms. Battle to consider giving the Philadelphia office a third vacancy." *Id.* ¶ 13. "Ms. Wender also approached Mr. Wills about Plaintiff's request to work remotely" and was told "that Headquarters was no longer allowing regional staff to work

3

remotely out of regional offices as the arrangement had not worked well in all instances." SUMF ¶¶ 26–27.

"On approximately March 17, 2016, Ms. Wender explained to Plaintiff that her request to transfer had been denied as there were no vacancies in the Philadelphia Regional office, which was a prerequisite for transfer approval." *Id.* ¶ 28. "Ms. Wender also explained that Headquarters would not allow her to work remotely out of the Philadelphia Regional Office, as they were no longer approving such arrangements for staff." *Id.* ¶ 30. "On March 18, 2016, Mr. Wills emailed Plaintiff denying her request to work remotely from the [Philadelphia Regional] office." *Id.* ¶ 29. "On March 30, 2016, Plaintiff filed an informal EEO Complaint, alleging sex discrimination based on the denial of her March 2016 request[.]" *Id.* ¶ 31.

3. *Plaintiff's March 30, 2016 Request: Telework from Philadelphia*

"[O]n March 30, 2016, Plaintiff submitted a written request to Mr. Hensel seeking an alternate telework agreement." *Id.* ¶ 32. "As part of [Plaintiff's] existing telework arrangement, Plaintiff worked only nine of the ten days of the pay period" and "[a]s of March 2016, Plaintiff noted that she teleworked two fixed days a week." *Id.* ¶¶ 34–35. "As part of her March 30, 2016, request, Plaintiff was requesting . . . to work eight, instead of nine, of the ten days of the pay period by taking every Friday off." *Id.* ¶ 36. Additionally, "Plaintiff proposed to telework from Philadelphia six of eight days of the [pay period]. For the other two days [of the pay period], Plaintiff proposed to come into [Metro] for two consecutive days." *Id.* ¶ 37 (internal citations omitted).

The stated Metro telework policy at the time was that "all eligible employees [could] be authorized to participate in the Telework Program [] as long as neither the employee nor organizational performance [were] negatively affected." Pl.'s Opp'n, Ex. 2, Telework Program 54,

ECF No. 35-2. According to Plaintiff, employees "were permitted two fixed telework days per week[.]" 2d Risch Decl. ¶ 2. Plaintiff's third-line supervisor—Ms. Wender—corroborated this understanding. *See* Wender Aff. ¶ 12. "Mr. Hensel asked Ms. Wender whether she would approve Plaintiff's request for an alternate telework arrangement." SUMF ¶ 39. "Ms. Wender indicated that she would need to discuss Plaintiff's request with Mr. Wills." *Id.* ¶ 40. "Mr. Wills directed both Mr. Hensel and Ms. Wender to deny Plaintiff's request to telework." *Id.* ¶ 43.

On April 11, 2016, "Ms. Wender circulated an email stating that staff could only telework two days per week." Pl.'s Statement Disputed Material Facts Supp. Pl.'s Opp'n Def.'s Mot. Summ. J. ("Disputed Facts") ¶ 38, ECF No. 35-1. "On April 19, 2016, Mr. Hensel denied Plaintiff's request for an alternate telework arrangement" via email. *Id.* ¶ 41. In the email to Plaintiff, Mr. Hensel wrote:

> In order to meet satisfactorily OCR's case-processing standards . . . you must have access to all relevant documentation for each case to which you are assigned. . . Because all relevant documentation is not currently available for review in the [online] system, [and] OCR staff must have access to the physical files . . . your request is denied because it does not meet the business needs that support the mission of OCR and is not in the best interest of OCR.

Pl.'s Opp'n, Ex. 1, David Hensel Email to Judith Risch ("April 19 Email") 51, ECF No. 35-2.

"On May 14, 2016, Plaintiff filed her formal EEO complaint, adding claims for retaliation and sex discrimination based on the April 2016 denial of her request for an alternate telework arrangement." SUMF ¶ 44. "Other than [Plaintiff's] May 14, 2016, EEO Complaint, [she] has not engaged in any other prior protected activity." *Id.* ¶ 45.

4.    *Post-Request Teleworking Arrangement (June 2016–June 2017)*

"In June 2016, Plaintiff and her family moved to Philadelphia." *Id.* ¶ 46. "Between June 2016 and June 2017, for eight of the ten days of the pay period, Plaintiff teleworked from Philadelphia for [Metro]." *Id.* ¶ 47. Also "[b]etween June 2016 and June 2017, on six days of the

eight days [Plaintiff] worked, Plaintiff either took leave or teleworked from home by request. On two consecutive days of the pay period, Plaintiff reported to [Metro]." *Id.* ¶ 48 (internal citations omitted). During this same period, "Plaintiff's duty station remained as [] D.C., . . . she continued to receive the Washington, D.C. locality rate[,] . . . [and] none of [her] salary, benefits, or responsibilities were otherwise altered as she teleworked from Philadelphia." *Id.* ¶¶ 49–50.

"Plaintiff's supervisors were aware of her teleworking arrangement from Philadelphia . . . and otherwise did not ever disapprove any of her requests to telework from home." *Id.* ¶ 51. "In June 2017, Plaintiff was formally approved to work remotely from Philadelphia." *Id.* ¶ 52. "On June 11, 2017, Plaintiff's duty station was changed from [D.C.] to Philadelphia." *Id.* ¶ 53. "Since June 2017, and until at least May 2022, except for certain occasions, Plaintiff . . . fully worked remotely from Philadelphia for [Metro]." *Id.* ¶ 54. "Plaintiff states that [from] June 2017 [on], she [was] satisfied with the remote work capabilities that the Department formally approved for her." *Id.* ¶ 55.

B.   Procedural History

On November 6, 2020, Plaintiff filed this suit. *See* Compl., ECF No. 1. On August 26, 2021, the parties consented to proceed before a U.S. Magistrate Judge for all purposes. *See* Joint Notice Consent Assign. Mag. Judge., ECF No. 20. The matter was then referred to the undersigned. *See* Min. Order (Sept. 2, 2021).

On June 2, 2022, the parties completed discovery. *See* Min. Order (June 7, 2022). On October 17, 2022, Defendant moved for summary judgment. *See* Def.'s Mot. Summ. J., ECF No. 33. On January 23, 2023, Plaintiff filed her memorandum in opposition to Defendant's motion for summary judgment. *See* Pl.'s Opp'n, ECF No. 35. On March 17, 2023, Defendant filed his reply. *See* Def.'s Reply Supp. Def.'s Mot. Summ. J. ("Reply"), ECF No. 38.

## II.     LEGAL STANDARD

To succeed on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). If the moving party meets this burden, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

In evaluating motions for summary judgment, the Court must review all evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmoving party's favor. *See Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam). In doing so, the Court must not assess credibility or weigh the evidence. *See Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013). However, the nonmoving party "may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence[.]" *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872–73 (8th Cir. 2005)). A genuine issue for trial must be supported by affidavits, declarations, or other competent evidence. *See* Fed. R. Civ. P. 56(c). If the nonmoving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50.

## III.    DISCUSSION

### A.    Discrimination and Retaliation

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII further "prohibits an employer from discriminating and/or retaliating against an employee 'because [s]he has opposed any practice' made unlawful practice by Title VII or 'has made a charge, testified, assisted, or participated in' a Title VII proceeding." *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 37 (D.D.C. 2013) (quoting 42 U.S.C. § 2000e-3(a)). "Where, as here, a plaintiff proffers only indirect evidence of unlawful discrimination [and retaliation], her case is subject to the three-part test the Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003).

Under that framework, the employee must first make out a prima facie case of retaliation or discrimination under Title VII. *See Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019). To establish a prima facie case of discrimination, the plaintiff must show that "(1) [s]he is a member of a protected class; (2) [s]he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008) (cleaned up). To establish a prima facie case of retaliation, the plaintiff must show that (1) "[s]he engaged in statutorily protected activity;" (2) "[s]he suffered a materially adverse action by [her] employer;" and (3) "a causal link connects the two." *Iyoha*, 927 F.3d at 574.

Next, the burden shifts to the employer to articulate a legitimate nondiscriminatory and nonretaliatory reason for its action. *See McGrath v. Clinton*, 666 F.3d 1377, 1383 (D.C. Cir. 2012). Such reason may include the employee's "'seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination' of such criteria." *Figueroa v. Pompeo*, 923 F.3d 1078, 1089 (D.C. Cir. 2019) (quoting *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1076 (11th Cir. 2003)) (cleaned up). If the employer makes this showing, "the burden-shifting framework disappears." *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004).

The "central inquiry" then becomes "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory [and nonretaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the plaintiff on a prohibited basis." *Iyoha*, 927 F.3d at 566 (quoting *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008)). In other words, the employee must demonstrate "pretext." *Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009).

When the employer properly presents a legitimate nondiscriminatory and nonretaliatory reason for the challenged action, the district court "need not—and *should not*—decide whether the plaintiff actually made out a prima facie case." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Because Defendant asserted legitimate nondiscriminatory and nonretaliatory reasons for the challenged actions, the *Brady* shortcut applies. *See Barry v. Haaland*, No. 19-cv-3380, 2022 WL 4598518, at *6 (D.D.C. Sept. 29, 2022), *aff'd*, No. 22-cv-5268, 2023 WL 2905253, at *1 (D.C. Cir. Apr. 10, 2023); Wender Aff. ¶¶ 13–14. Thus, the Court will proceed to step two. *See id.*

B.     Defendant's Legitimate Nondiscriminatory and Nonretaliatory Justifications

Four factors are "paramount in the analysis" of whether an employer has met its burden: (1) the employer must produce admissible evidence; (2) "the factfinder, if it believe[s] the evidence, must reasonably be able to find that the employer's action was motivated by a nondiscriminatory [and nonretaliatory] reason;" (3) the employer's justification must be "facially credible in light of the proffered evidence;" and (4) the employer must provide a "clear and reasonably specific explanation" for its action. *Figueroa*, 923 F.3d at 1087–88 (cleaned up). Defendant has asserted legitimate, nondiscriminatory and nonretaliatory reasons for denying each of Plaintiff's requests.

1.     *Plaintiff's First Request: Transfer to Philadelphia Regional Office*

First, Defendant "has supported its justifications with evidence that the Court may consider at summary judgment, including deposition testimony [and] supporting emails[.]" *Arnoldi v. Bd. of Trs.*, 557 F. Supp. 3d 105, 115 (D.D.C. 2021) (cleaned up); *see* Pl.'s Opp'n. This includes sworn affidavits from Plaintiff's second and third-line supervisors. *See* Wender Aff.; Def.'s Mot. Summ. J., Ex. 7, EEO Investigative Aff. ("Suris Aff."), ECF No. 33-10. Moreover, Defendant provided: email communications from Mr. Wills, Ms. Wender, and Plaintiff; comparator information; and other materials pertaining to the investigation into Plaintiff's claim. *See* Decls. & Exs. to Pl.'s Opp'n, ECF No. 35-2. Plaintiff "does not contest the admissibility of [Defendant's] evidence." *Moss v. Hayden*, No. 18-cv-470, 2020 WL 4001467, at *4 (D.D.C. July 15, 2020); *see generally* Pl.'s Opp'n. Indeed, "neither party disputes a factfinder could consider [this evidence] at summary judgment to support [Defendant's] nondiscriminatory explanation." *Clinton*, 2021 WL 1166737, at *8 (quoting *Figueroa*, 923 F.3d at 1087).

Second, Defendant need only "raise a genuine issue of fact as to whether the employer intentionally discriminated against the employee" to satisfy its step two burden. *Figueroa*, 923 F.3d at 1087 (cleaned up). It is undisputed that OCR's transfer policy dictated that "the [ultimate] decision to accept a transferee . . . [was] at the discretion of the director of the receiving office." Def.'s Mot. Summ. J., Ex. 12, Emails dated between April 29, 2010, and April 15, 2016 ("April 2010–April 2015 Emails") 2, ECF No. 33-15. Ms. Wender reached out to "[Ms.] Fox, the Regional Director of the Philadelphia Office to see if she had any approved vacant positions to fill; and if so, was she willing to fill at least one of them with [Plaintiff]." Wender Aff. ¶ 13. Ms. Fox informed Ms. Wender that there were no vacancies, and that "[Ms. Fox] already had sufficient staff with expertise in [Plaintiff's specialty] areas[.]" *Id.* Ms. Fox informed Ms. Wender that the "office was not interested in bringing [Plaintiff] on board." *Id.* Thus, Ms. Wender did not approach Ms. Battle about the possibility of creating a new vacancy in the Philadelphia Regional Office. *See id.*

Ms. Wender's determination that Plaintiff lacked the requisite "qualifications . . . because [s]he did not meet the [expertise] requirement" is a valid reason. *Heilman v. Allegheny Energy Serv. Corp.*, 351 F. App'x 645, 648 (3d Cir. 2009). In fact, an employee's "lack of qualifications or the absence of a vacancy in the job sought" are "the two most common legitimate" explanations for refusing to promote or hire a person. *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) (cleaned up). There is no evidence that Ms. Wender did not genuinely believe these rationales. *See* Wender Aff. ¶ 13. And this is critical given that "the inquiry is limited to whether [Ms. Wender] believed the [information] in good faith and whether [her] decision . . . was based on that belief." *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165–66 (5th Cir. 1993). As such, and given that Ms. Wender is a "member[] of . . . [P]laintiff's protected class, any inference of discrimination,

without additional evidence, is not warranted." *Cox v. Nielsen*, No. 16-cv-1966, 2019 WL 1359806, at *21 (D.D.C. Mar. 26, 2019) (cleaned up).

Third, facial credibility is not met if the nondiscriminatory explanation is "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Bishopp v. District of Columbia*, 788 F.2d 781, 786 (D.C. Cir. 1986). Defendant's statements and documents are internally consistent. Defendant consistently stated that a person joining the Philadelphia office needed "expertise investigating sexual violence and Title VI discipline cases[.]" Wender Aff. ¶ 13. Plaintiff conceded that: she did not have any experience investigating sexual violence; had "worked on some sexual harassment and sex discrimination cases in the beginning of [her] career, in 2005 and 2006[;]" and that she had some limited experience with Title VI discipline cases.[2] Def's Mot. Summ. J., Ex. 1, Dep. Judith Risch ("Pl.'s Dep.") 45–46, ECF No. 33-4. Plaintiff further conceded that in 2016, she primarily worked on investigations pertaining to "digital accessibility and disability." *Id.* at 44–45. Regardless, "the issue is not the correctness or desirability of the reasons offered but whether [Ms. Wender and Ms. Fox] honestly believe[d] in the reason [they] offer[ed]" at the time of Plaintiff's request. *Arnoldi*, 557 F. Supp. 3d at 116. It is uncontroverted that they believed Plaintiff lacked the requisite experience for the only vacancy in Philadelphia. *See* Wender Aff. ¶ 13. Therefore, Defendant's nondiscriminatory explanation—that

---

[2] "Under the [sham affidavit] doctrine, courts will disregard an offsetting affidavit that is submitted to withstand a motion for summary judgment when the affidavit contradicts prior deposition testimony without adequate explanation and creates only a sham issue of material fact." *Hinch v. Lucy Webb Hayes Nat'l Training Sch. Deaconesses & Missionaries Conducting Sibley Mem'l Hosp.*, 814 A.2d 926, 929 (D.C. Cir. 2003). Plaintiff stated in an affidavit filed with her opposition to summary judgment that she had "*substantial* experience in . . . sexual violence (Title IX) [and] race and national origin discrimination (Title VI)." 2d Risch Decl. ¶ 1 (emphasis added). This contradicted her prior testimony. *See* Pl.'s Dep. at 45–46. Because Plaintiff did not "provide a satisfactory explanation for [providing this later affidavit] . . . [Plaintiff] may not use [this] later affidavit to contradict the facts previously provided to survive summary judgment." *Escribano-Reyes v. Pro. Hepa Certificate Corp.*, 817 F.3d 380, 385 (1st Cir. 2016).

Plaintiff was not qualified for the available vacancy—"is facially credible in light of the evidence of Plaintiff's qualifications[.]" *Nagi v. Buttigieg*, 619 F. Supp. 3d 115, 125 (D.D.C. 2022) (cleaned up).

Fourth, Defendant's "explanations were sufficiently clear and specific to allow [Plaintiff] ample opportunity to bring forward evidence to 'disprove [the] defendant's reasons.'" *Clinton*, 2021 WL 1166737, at *9 (quoting *Figueroa*, 923 F.3d at 1088). "On approximately March 17, 2016, Ms. Wender explained to Plaintiff" the reasoning for refusing Plaintiff's transfer request. SUMF ¶ 28. There was no ambiguity in Defendant's reasoning. *See* Wender Aff. ¶ 20. Indeed, Plaintiff concedes that Ms. Wender told Plaintiff that the Philadelphia "office did not need an attorney with [Plaintiff's] expertise in web access for disabled persons[.]" Pl.'s Opp'n at 11. Accordingly, "Defendant has articulated reasons with sufficient specificity to provide [Plaintiff] a full and fair opportunity to attack the explanation as pretextual." *Moss*, 2020 WL 4001467, at *5 (cleaned up) (plaintiff challenged employer's qualifications-based explanation for not promoting her).

      2.    *Plaintiff's March 10, 2016 Request: Work Remotely for Metro from Philadelphia Regional Office*

First, Defendant supported his explanation with admissible evidence. Specifically, Defendant provided the depositions of Plaintiff and Mr. Wills; email correspondence; the affidavits of Ms. Wender, Mr. Hensel, and Mr. Suris, among other documents.[3] This is standard admissible evidence. *See Arnoldi*, 557 F. Supp. 3d at 115 (cleaned up). Moreover, Plaintiff does not challenge the admissibility of this evidence. *See Moss*, 2020 WL 4001467, at *4; *see generally* Pl.'s Opp'n.

---

[3] *See* Pl.'s Dep.; Def.'s Mot. for Summ. J., Ex. 2, Dep. Randolph Wills ("Wills Dep.") ECF No. 33-5; April 2010–April 2015 Emails; Wender Aff.; Def.'s Mot. Summ. J., Ex. 6, Aff. David Hensel ("Hensel Aff."), ECF No. 33-9; Suris Aff.

Second, Defendant articulated a legitimate nondiscriminatory justification. Mr. Wills conveyed to Ms. Wender that "Headquarters" was no longer permitting telework by regional staff from another regional office because the "arrangement had not worked well in all instances." SUMF ¶ 27. "[F]ailure to comply with [company] policies" is a legitimate nondiscriminatory reason. *Waters v. Gen. Bd. of Glob. Ministries,* 769 F. Supp. 2d 545, 558 (S.D.N.Y. 2011). "To be sure, it is not the Court's role to independently determine whether [Plaintiff's] request fell within the contours of [OCR's] telework policy. Instead, the critical issue is whether [Mr. Wills and Ms. Wender] honestly and reasonably believed that [Plaintiff's] request fell outside of the telework policy, and [Plaintiff] simply fails to present any credible evidence to impugn [Mr. Hensel's] explanation[.]" *Byrd*, 931 F. Supp. 2d at 42 (cleaned up); *see* SUMF ¶¶ 40–43; April 19 Email.

Third, Defendant's reasoning for denying Plaintiff's request was "internally []consistent on its face." *Bishopp*, 788 F.2d at 786. Both Mr. Wills and Ms. Wender stated that Defendant no longer allowed Plaintiff's requested telework arrangement. *See* SUMF ¶¶ 26, 30. Plaintiff conceded that although other government agencies allowed for such telework arrangements, Defendant did not. *See* Pl.'s Dep at 59. Plaintiff contends that Defendant had approved such telework arrangements before Plaintiff made her request in March 2016. *See* 2d Risch Decl. ¶ 3. However, Ms. Wender readily acknowledged that this was the prior policy. *See* Wender Aff. ¶ 14. Moreover, the fact that OCR had historically approved telework arrangements, does not contravene Mr. Wills's and Ms. Wender's honest belief that Defendant stopped approving such requests by March 2016 or that the prior arrangements failed. *See* SUMF ¶¶ 26, 30. Their uncontroverted honest belief about company policy is what matters. *See Arnoldi*, 557 F. Supp. 3d at 116. Therefore, Defendant's nondiscriminatory explanation is facially credible. *See Davis v. Joseph J. Magnolia, Inc.*, 893 F. Supp. 2d 165, 171–72 (D.D.C. 2012) ("The Court declines to find

evidence of pretext where plaintiff and his employer shared the same understanding of company policy[.]").

Fourth, Defendant produced a "clear and reasonably specific explanation" for its denial of Plaintiff's initial telework request. *Figueroa*, 923 F.3d at 1088 (cleaned up). Defendant unambiguously refused the request. *See* Pl.'s Dep. at 53. Ms. Wender explained the reasons for the denial to Plaintiff. *See* SUMF ¶ 30. On March 18, 2016, Mr. Wills followed up with an email to Plaintiff denying her telework request. *See id.* ¶ 29. Plaintiff did not seek further clarification; instead, Plaintiff made a second distinct request to telework shortly thereafter. *See id.* ¶ 32. Defendant's explanation gave Plaintiff a clear opportunity to challenge the asserted justification as pretextual. *See Moss*, 2020 WL 4001467, at *5.

   3.   *Plaintiff's March 30, 2016 Request: Modified Request to Work Remotely for Metro from Philadelphia Regional Office*

First, Defendant again provided evidence that the Court can consider at summary judgment, including email correspondence regarding the denial of the request; emails regarding Metro's telework policy; depositions of Plaintiff and Mr. Wills; and affidavits from Mr. Hensel, Mr. Suris, and Ms. Wender. *See Arnoldi*, 557 F. Supp. 3d at 115; *supra* n.3. And, again, Plaintiff does not say otherwise. *See Moss*, 2020 WL 4001467, at *4; *see generally* Pl.'s Opp'n.

Second, Defendant articulated a legitimate nondiscriminatory and nonretaliatory justification. OCR's telework policy stated that "all eligible employees [could] be authorized to participate in the Telework Program [] as long as neither the employee nor organizational performance [were] negatively affected." Telework Program at 54. Plaintiff's request fell outside this policy. Specifically, Plaintiff's request "would not meet the business needs of [the] agency . . . [as] she would not have access . . . to physical files," which OCR deemed necessary. Wender Aff.

¶ 14. Plaintiff acknowledged that she "had some physical files . . . for [her] cases[.]" Pl.'s Dep. at 102.

This justification suffices for three independent reasons. First, the "failure to comply with [company] policies" is a legitimate reason. *Waters*, 769 F. Supp. 2d at 558. Second, the "inability to perform [] duties is an additional legitimate, non-discriminatory [and nonretaliatory] reason[.]" *Sidaris v. Runyon*, 967 F. Supp. 1260, 1271 (M.D. Ala. 1997). Third, denying a telework arrangement because the work requires some in-person tasks is a legitimate reason. *See Equal Emp. Opportunity Comm'n v. Ford Motor Co.*, 782 F.3d 753, 762–63 (6th Cir. 2015) (holding that "[r]egular, in-person attendance is an essential function . . . of most jobs" and affirming lower court judgment granting the defendant's motion for summary judgment); *see* SUMF ¶¶ 40–43; April 19 Email. "Being . . . reasonable[,] nondiscriminatory, [and nonretaliatory,] that is enough to take us to the third step under *McDonnell Douglas*[.]" *Fischbach v. D.C. Dep't Corr.*, 86 F.3d 1180, 1182 (D.C. Cir. 1996).

Third, Defendant's reasoning for denying Plaintiff's request was "internally []consistent on its face." *Bishopp*, 788 F.2d at 786. Defendant consistently stated that: Plaintiff needed access to physical files in Metro, lacking access to these files would negatively affect performance, and company policy thus forbade telework by Plaintiff. *See* April 19 Email; Telework Program at 54; 2d Risch Decl. ¶ 2. Again, it is uncontroverted that Mr. Wills, Ms. Wender, and Mr. Hensel believed these statements. *See* April 19 Email; *Arnoldi*, 557 F. Supp. 3d at 116. Indeed, Ms. Wender emailed Mr. Hensel that Plaintiff's proposed arrangement was "basically [working in the office one day a week or less] which [was] not permissible." April 2010–April 2015 Emails. An employer's justification that an employee must comply with company policy is credible. *See Varela v. Phila. Neighborhood Hous. Servs., Inc.*, 68 F. Supp. 2d 575, 582 (E.D. Pa. 1999) (finding

16

that Plaintiff's "repeated[] fail[ure] to comply with company rules and procedures" was a legitimate, nondiscriminatory reason for its decision to discharge Plaintiff).

Fourth, Defendant's "explanations were sufficiently clear and specific[.]" *Clinton*, 2021 WL 1166737, at \*9. The April 19 email from Mr. Hensel to Plaintiff provided detailed explanations for why Plaintiff's proposed teleworking schedule did not "meet satisfactorily OCR's case-processing standards set forth in [her] performance plan." April 19 Email. This email gave Plaintiff "a clear opportunity to challenge the asserted justification as merely a pretext[.]" *Williams v. Smithsonian Inst.*, No. 14-cv-1900, 2019 WL 3859155, at \*9 (D.D.C. Aug. 16, 2019).

C.    Plaintiff's Evidence of Pretext

"The burden now shifts to Plaintiff to provide sufficient evidence by which a reasonable jury could find [Defendant's] stated reason was pretext for discrimination or retaliation." *Albert v. Perdue*, No. 17-cv-1572, 2019 WL 4575526, at \*5 (D.D.C. Sept. 20, 2019).

To establish pretext, a plaintiff may show that the defendant provided a "false" explanation for its employment decision. *Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C. Cir. 2003). Alternatively, an "employer's failure to follow established procedures or criteria" may also provide evidence of pretext allowing an employee to survive summary judgment. *Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 68 (D.D.C. 2016) (quoting *Brady*, 520 F.3d at 495 n.3). Finally, "[a] plaintiff can establish pretext masking a discriminatory [or retaliatory] motive by presenting 'evidence suggesting that the employer treated other employees of a different [group] . . . more favorably in the same factual circumstances.'" *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (quoting *Brady*, 520 F.3d at 495.

1.  *Plaintiff's Comparators: Overview*

a.  Legal Standard

"[T]o serve as a comparator, the other employee[s] must be 'similarly situated' to the plaintiff." *Clinton*, 2021 WL 1166737, at *11 (quoting *Burley*, 801 F.3d at 301). "[A] showing of similarity to comparators 'would include evidence that the employees dealt with the same supervisor, [were] subject to the same standards[,] and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Emami v. Bolden*, 241 F. Supp. 3d 673, 689–90 (E.D. Va. 2017) (cleaned up) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)). "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met [her] burden on this issue." *Johnson v. Advoc. Health & Hosps. Corp.,* 892 F.3d 887, 895 (7th Cir. 2018).

b.  Identified Comparators

Plaintiff identifies several potential comparators.

In 2010, "Mr. [Stephen] Chen was a staff attorney in the San Francisco office when he began working on the Equity and Excellence Commission [at Metro]. He was permitted to continue his work via a detail to [Metro] from the summer of 2010 to the summer of 2011, but was not [physically present] in the [] Metro office." SUMF ¶¶ 57–58. "However, when his wife accepted a position at the University of Colorado, he asked to and was transferred to the Denver office as a staff attorney[.] . . . There is no evidence that there were open staff attorney positions either in [Metro] or in Denver when Mr. Chen was permitted these transfers." *Id.* But "Plaintiff has never worked on the Equity and Excellence Commission[.]" *Id.* ¶ 59.

"On January 11, 2015, Mr. David Hensel was detailed to the Office of the Assistant Secretary at Headquarters in Washington, D.C." *Id.* ¶ 60. But "[t]he Office of the Assistant Secretary at Headquarters in Washington, D.C. is a separate office from [Metro]." *Id.* ¶ 61. "On April 19, 2015, Mr. Hensel was approved to transfer to [Metro]." *Id.* ¶ 62.

"On December 2, 2013, Mr. Daniel Kim was approved to work for the Kansas City Regional Office out of the Chicago Regional Office and then later transferred to the Chicago Regional Office in August 2014." *Id.* ¶ 63.

"On February 23, 2013, Mr. Ryan Milligan was approved to work from Boston for the New York Regional Office." *Id.* ¶ 64. Mr. Milligan's wife, Ms. Emma Kim, was "also approved . . . to work from the Boston Regional Office for the New York Regional Office." *Id.* ¶ 73.

 "In February 2016, Ms. Wender received approval for Ms. Jeanette Tejada-Bustos's transfer from the New York Regional Office to [Metro]." *Id.* ¶ 65. Thus, "[i]n February 2016, Ms. Tejada-Bustos was permitted to work from the New York Regional Office after her transfer to [Metro] had already been granted and approved." *Id.* ¶ 66. But "[i]n 2016, Ms. Jeanette Tejada-Bustos was on a different team than Plaintiff[,]" *id.* ¶ 68, and had "moved to an open position [at Metro.]" Disputed Facts ¶¶ 65–68.

On May 31, 2015, Metro "granted Ms. Linda Floyd's request to transfer from the Boston Regional Office to the Dallas Regional Office[.]" SUMF ¶ 69. However, "Ms. Floyd's request for a transfer was initially denied, and only granted when a position opened[.]" Disputed Facts ¶ 69. Metro similarly granted: "Ms. Tanya Oliveira's request to transfer from the Chicago Regional Office to the Dallas Regional Office in August 2014[,] . . . Ms. Cynthia Stewart's request to transfer from the Atlanta Regional Office to the Dallas Regional Office in August 2011[,] . . . [and] Ms. Stephanie Pessin's request to transfer from the Dallas Office to the Atlanta Regional Office in

October 2013." SUMF ¶¶ 70–72. As with Ms. Floyd, these three women "transferred to open positions." Disputed Facts ¶¶ 70–72.

In 2014, Metro "denied Ms. [Virginia] Martin-Hansen's request to telework from Minot, North Dakota as '[c]ost prohibitive.'" SUMF ¶¶ 74–75.

"Ms. Wanda Frazier was an investigator for [Metro]." *Id.* ¶ 77. Plaintiff claims Ms. Frazier "teleworked 100 percent of the time[.]" Disputed Facts ¶ 77.

"In 2016, Ms. Clash-Drexler was a part-time employee . . . on [a] different team than Plaintiff" and "was only formally approved for two fixed telework days a week." *Id.* ¶¶ 80–82.

### c.      Application of Comparators

Plaintiff spends two pages of her brief on comparators.[4] *See* Pl.'s Opp'n at 14–15. However, Plaintiff fails to develop substantive arguments to support the comparators, let alone apply caselaw where comparators demonstrated pretext. *See id.* Rather, Plaintiff merely points to general facts about the comparators in her brief and loads facts about them into her statement of disputed facts. *See id.*; Disputed Facts ¶¶ 57–82. The undersigned is "neither required nor inclined to attempt to decipher how [these] . . . unexplained [facts about comparators] might support [P]laintiff's arguments." *Hayes v. Skywest Airlines, Inc.*, No. 15-cv-991, 2017 WL 6550891, at *5 (D. Colo. May 19, 2017). As much as the undersigned may want, "Judges [can]not [be] like [fanboys and fangirls, hunting for [Taylor Swift tickets] buried in [the depths of the internet]." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Plaintiff's submission does not carry her burden to demonstrate pretext via comparators. *See Ey v. Off. of Chief Admin. Officer of U.S.*

---

[4] Alternatively, Defendant spends eleven pages in his opening brief and reply detailing factual and legal differences between comparators. *See* Mem. Supp. Def.'s Mot. Summ. J. 22–26, ECF No. 33-1; Reply at 20–25.

*House of Representatives*, 967 F. Supp. 2d 337, 345 (D.D.C. 2013). However, for the sake of argument, the Court analyzes Plaintiff's comparators below.

> 2.   *Plaintiff's March 10, 2016 Request: Transfer to Philadelphia Regional Office*
>
> a.   Pretext: False Explanation

The Court is not a "super-personnel department that reexamines an entity's business decisions." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007) (cleaned up). Business decisions include "assessing . . . [employee] qualifications[,]" *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006), and deciding promotions or transfers, *see Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999). Ms. Wender articulated to Ms. Fox what Plaintiff's expertise was. *See* 2d Risch Decl. ¶ 1; Wender Aff. ¶ 13. Ms. Fox decided that Plaintiff was not qualified to investigate sexual violence and Title VI issues, which were the core needs of the Philadelphia vacancy. *See* Wender Aff. ¶ 13.

Plaintiff counters that "she had worked in a variety of areas, including both sexual violence and Title VI issues" earlier in her career.[5] Pl.'s Opp'n at 11. But Ms. Fox made a business decision: Defendant could not rely on Plaintiff's experience from a decade prior. *See* Pl.'s Dep. at 44–46. This was a legitimate business decision. *See Jackson*, 496 F.3d at 708. Accordingly, Plaintiff failed to demonstrate Defendant's reasoning was a "false" explanation for its business decision. *Lathram*, 336 F.3d at 1089.

---

[5] Plaintiff solely relies on her sworn statement to establish this past expertise. *See* 2d Risch Decl. ¶ 1. This "meager [evidentiary] showing" of only "her own . . . testimony" fails to contradict the reasoning behind Defendant's decision. *Coleman v. Mayorkas*, No. 18-cv-2268, 2021 WL 930263, at *14 (D.D.C. Mar. 11, 2021). Moreover, the Court discounts Plaintiff's statement regarding this topic. *See supra* at n.2.

b.      Pretext: Comparators

Plaintiff points to a set of male and female comparators to demonstrate "that similarly situated men were permitted remote work or a detail until an opening could be found to accommodate their needs to change location, but women were not." Pl.'s Opp'n at 14. Plaintiff's proffered male comparators—Mr. Chen, Mr. Kim, Mr. Mulligan, and Mr. Hensel—each sought relocation from non-Metro Regional Offices to non-Philadelphia Regional Offices. *See* SUMF ¶¶ 57–64. Therefore, they were not "deal[ing] with the same supervisor[s]." *Emami*, 241 F. Supp. 3d at 689. Moreover, the reason for Ms. Fox's denial was specific to the needs of the Philadelphia office. *See* Wender Aff. ¶ 13. As such, these comparators are not similarly situated. *See Emami*, 241 F. Supp. 3d at 689.

Likewise, Plaintiff's proffered female comparators were not similarly situated. Ms. Martin-Hansen requested to work remotely from Minot, North Dakota where no OCR Regional Office was located. *See* SUMF ¶¶ 74–75. Defendant denied this request because it would be "[c]ost prohibitive." SUMF ¶¶ 74–75. This is a legitimate business reason. *See Breen v. Mineta*, No. 05-cv-654, 2005 WL 3276163, at *6 (D.D.C. Sept. 30, 2005) ("[A]ctions designed to save costs do not equate with . . . discrimination[.]"). Plaintiff provides no evidence, beyond gender, that she and Ms. Martin-Hansen were similarly situated. *See* Pl.'s Opp'n (no mention of Ms. Martin-Hansen); Disputed Facts (same). Notably, Plaintiff's other female comparators' requests were approved. *See id.* ¶¶ 65–82. "[T]hat other employees in a protected group analogous to [Plaintiff] were treated well suggests that" Plaintiff's sex was not the reason for her treatment. *Geter v. Gov't Publ'ng Off.*, 436 F. Supp. 3d 227, 240 (D.D.C. 2020).

Several factors cut against the other proffered female comparators. For example, Ms. Clash-Drexler and Ms. Tejada-Bustos were not "deal[ing] with the same supervisor[s]" as Plaintiff

22

and were on different teams. *Emami*, 241 F. Supp. 3d at 689; *see* SUMF ¶¶ 67–68, 78–79, 81. Furthermore, Ms. Clash-Drexler was a part-time employee, whereas Plaintiff was full-time. *See* SUMF ¶¶ 1, 80; *Savignac v. Jones Day*, 486 F. Supp. 3d 14, 34 (D.D.C. 2020) (summarizing Eighth Circuit case affirming grant of summary judgment where "plaintiff . . . failed to show that he was similarly situated with his wife, who (unlike the plaintiff) was a part-time employee") (citing *Johnson v. Univ. of Iowa*, 431 F.3d 325 (8th Cir. 2005)). Finally, Ms. Floyd, Ms. Oliveira, Ms. Stewart, and Ms. Pessin were approved transfers only once open positions became available in their respective desired regional offices; however, as with the male comparators, these three women sought transfers to non-Philadelphia Regional Offices and are therefore not comparable. *See* SUMF ¶¶ 69–72; *Emami*, 241 F. Supp. 3d at 689–90.

> 3.  *Plaintiff's March 10, 2016 Request: Work Remotely for Metro from Philadelphia Regional Office*

> > a.  Pretext: False Explanation

 "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible." *Hogan v. Hayden*, 406 F. Supp. 3d 32, 46 (D.D.C. 2019) (quoting *Pignato v. American Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994)). To demonstrate pretext, the plaintiff "must show that the explanation given is a phony reason." *Pignato*, 14 F.3d at 349 (cleaned up).

Plaintiff claims there is "no evidence that [telework arrangements] had not worked in the past[.]" Pl.'s Opp'n at 12. Yet this ignores that only Defendant adduced evidence on this subject, all of which indicated such arrangements were not to management's satisfaction. *See* SUMF ¶¶ 26, 30. Additionally, Defendant maintains that at the time of Plaintiff's request, Plaintiff's work required at least some access to files physically located in Metro. *See* April 19 Email. And Plaintiff acknowledges that she "had some physical files . . . for [her] cases[.]" Pl.'s Dep. at 102. Defendant

put forth legitimate reasons for denying Plaintiff's request, and therefore Plaintiff "failed to prove that [Defendant's] explanation . . . was pretextual." *Pignato*, 14 F.3d at 349.

b.     Pretext: Comparators

Plaintiff points to four comparators: Ms. Kim, Mr. Milligan, Mr. Kim, and Ms. Russo. *See* Pl.'s Opp'n at 14. Ms. Kim, Mr. Milligan, and Mr. Kim teleworked out of non-Metro offices for non-Philadelphia regional offices. *See* Pl.'s Opp'n at 14. Specifically, both Ms. Kim and Mr. Milligan worked remotely from Boston for the New York Regional Office, *see id.* at 14, and Mr. Kim worked remotely from the Chicago Regional Office for the Kansas City Regional Office, *see id.* at 12. Additionally, none of their telework programs ran afoul of OCR's telework policy. *See* Reply at 21, 25. In *Walker v. McCarthy*, the court held that the plaintiff was not similarly situated to his proffered comparators because

> [Q]uite unlike the plaintiff's request to work temporarily from a location with no EPA facility, the record evidence demonstrate[d] that each of the[] proposed comparators was simply reassigned from one EPA facility to another either for personal reasons or in connection with changes in their job responsibilities. This distinction, coupled with the agency's unrefuted evidence that the plaintiff's work for the agency demanded collaboration with other EPA employees, which would be complicated by the plaintiff's request to work remotely from a location with no EPA facility significantly undermine[d] any easy comparison between the plaintiff and these proposed comparators.

170 F. Supp. 3d 94, 109 (D.D.C. 2016) (cleaned up). Similarly, Plaintiff's telework request differed from her proffered comparators in that it was not justified by a business or staffing need, and her work at Metro necessitated access to physical files. *See* Wender Aff. ¶ 14. Thus, Mr. Kim, Ms. Kim, and Mr. Milligan were not "similarly situated to [Plaintiff.]" *Walker*, 170 F. Supp. 3d at 108 (cleaned up).

Ms. Russo was permitted to work for Metro from the Dallas Regional Office for approximately eight years as a Deputy Chief Attorney—a higher-level position than Plaintiff—

24

reporting directly to Mr. Suris. *See* SUMF ¶ 76. This difference in work position makes Ms. Russo an improper comparator. *See Perry v. Clinton*, 831 F. Supp. 2d 1, 16–17 (D.D.C. 2011). And again, even if Ms. Russo is considered a proper comparator, that another "employee[] in a protected group analogous to [Plaintiff was] treated well suggests that" Plaintiff's sex was not the reason for her treatment. *Geter*, 436 F. Supp. 3d at 240. Because Plaintiff "fail[ed] to produce evidence that the proposed comparators were actually similarly situated to [her], an inference of falsity [or discrimination] is not reasonable, and summary judgment is appropriate." *Walker*, 170 F. Supp. 3d at 108 (cleaned up).

4.   *Plaintiff's March 30, 2016 Request: Modified Request to Work Remotely for Metro from Philadelphia Regional Office*

a.   Pretext: False Explanation

Plaintiff argues that because she "successfully teleworked from Philadelphia since June 2017, with no meaningful change in the availability of physical files[,]" the "differences [between Philadelphia and Metro] are in fact meaningless." Pl.'s Opp'n at 15. However, "[t]he Court's task is not to decide whether [Defendant] made the right calls, only whether [his] stated reasons were not the actual reasons." *Arnoldi*, 557 F. Supp. 3d at 118. The mere fact that Plaintiff's telework arrangement has been successful since 2017 "do[es] not undermine [Defendant's] stated reasons" that in-person work was needed to manage paper files on occasion. *Id*. Again, Defendant put forth a legitimate explanation for denying Plaintiff's request. *See Pignato*, 14 F.3d at 349. Thus, Plaintiff's proffered reasoning corroborates the "absen[ce of a] demonstrably [retaliatory] motive." *Fischbach*, 86 F.3d 1180 at 1183.

b.   Pretext: Inconsistency

Plaintiff claims that "Defendant . . . deviate[d] from established procedure in denying the requests . . . [as] Ms. Wender . . . was the individual responsible for approvals of remote work, . . .

and yet Mr. Wills twice overruled her in this matter." Pl.'s Opp'n at 13. In fact, the only established procedure was the telework policy, which does not indicate whether Ms. Wender or Mr. Wills was the appropriate authority; rather, it simply states that "[t]he decision to approve the employee's request . . . will be made by the approving official[.]" Telework Program at 63. Plaintiff puts forth neither evidence that Ms. Wender was the approving authority nor that Mr. Wills departed from agency procedure in denying her requests. *See* Pl.'s Opp'n at 13–14. Where a "policy confers substantial discretion on the decision maker . . . and [Plaintiff] offers no evidence showing that that [Defendant] applied the policy differently to [Plaintiff] than it did to other employees[,]" the plaintiff fails to demonstrate pretext. *Chambers v. Fla. Dep't of Transp.*, 620 F. App'x 872, 879 (11th Cir. 2015).

c.     Pretext: Comparators

Plaintiff again points to Mr. Kim, Mr. Milligan, and Ms. Kim as comparators. *See* Pl.'s Opp'n at 15. However, this Court has already found them to be not similarly situated. *See supra* III.C.3.b.

## IV.    CONCLUSION

For the foregoing reasons, the Court will GRANT Defendant's Motion for Summary Judgment in an accompanying order. As such, judgment is entered as a matter of law in favor of Defendant.

Date: August 18, 2023

                                      _____

                                      ZIA M. FARUQUI
                                      UNITED STATES MAGISTRATE JUDGE